IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES ex rel.<br>DE'VON CANNON, :<br>        Plaintiff,<br><br>v.<br><br>RESCARE, INC., et al.,<br>        Defendants. | Civ. No. 09-3068 |

**Diamond, J.**                                                       **September 16, 2014**

## MEMORANDUM

      The 2008 version of the False Claims Act requires proof that the defendant intended to defraud the United States. The 2009 Amendment does not. Having twice failed to plead a cognizable claim under the 2008 version of the FCA, Relator in this *qui tam* action now adds a claim under the 2009 Amendment. Defendants argue, *inter alia*, that because this Amendment was enacted after their allegedly wrongful conduct, its application here would violate the Constitution's *Ex Post Facto* Clause. I do not agree.

## STANDARDS

      Defendants Rescare and its subsidiary Arbor Earn Center—the former employers of Relator, De'von Cannon—have moved to dismiss. Accordingly, I must accept as true Relator's factual allegations and make all reasonable inferences in his favor. Fed. R. Civ. P. 12(b)(6); In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Defendants must show that Relator has failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

      FCA claims must be pleaded with particularity, as required by Rule 9(b). See Fed. R.

Civ. P. 9(b); United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234 (3d Cir. 1998); see also In re Rockefeller, 311 F.3d at 216 ("Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud."). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential factual background . . . that is, the who, what, when, where and how of the events at issue." In re Rockefeller, 311 F.3d at 217 (quotation omitted).

## BACKGROUND

### I. The Alleged Scheme

Relator worked for Arbor (Rescare's wholly owned subsidiary), from November 2008 to March 2009. (Second Am. Compl., Doc. No. 41, ¶¶ 13, 54.) Defendants had contracted with the Philadelphia Workforce Development Corporation to provide employment placement and training services to those individuals who received funds from two federal programs: 1) "Temporary Assistance to Needy Families," and 2) the "Supplemental Nutritional Assistance Program." (Id. ¶ 12.) Upon placing a person in a job and training him or her, Defendants received federal TANF funds and state funds. (Id. ¶¶ 17, 57.) For each individual Defendants successfully placed, and for every day he or she was employed, Defendants received additional funds. (Id.) Penalties (including contract termination) could result if Defendants failed to meet specific goals for clients' work activities and work participation rates. (Id. ¶ 33.)

Relator alleges that Defendants: 1) submitted false data to inflate their work participation rate; 2) placed "unqualified and unemployable people" in jobs for less than a full day and then claimed that they worked the entire day; 3) listed job candidates as employed when they were no

longer employed or had not been placed at all; 4) placed unemployable candidates in job readiness classes when they should have been referred for drug, alcohol, or psychiatric treatment; and 5) improperly placed unemployable candidates into other programs for which a referral placement fee was paid to Defendants. (Id. ¶¶ 34, 43, 44, 45, 47.)

To comply with federal auditing requirements, PWDC compiled its payment information (including disbursements to Defendants) for submission to the Pennsylvania Department of Labor and Industry. (Id. ¶¶ 36, 38, 48.) This agency then aggregated all TANF information and submitted it to the Federal Government. (Id. ¶ 48.)

Relator alleges that when he learned that Defendants were making "illegal" payment requests to PWDC, he refused to take part. (Id. ¶ 43.) He complained to a Program Director, the Human Resource Director, Relator's immediate supervisor, and a ResCare Regional Vice President. (Id. ¶¶ 43, 49, 64.) Relator threatened to inform PWDC of the fraudulent activity. (Id. ¶ 49.)

In December 2008, Relator reported that he had been sexually harassed by a female coworker. (Id. ¶ 51.) After a second such incident, the coworker was fired. (Id.) On March 18, 2009, Relator was terminated for a purported conflict of interest. (Id. ¶ 54.) On July 10, 2009, Relator filed his Original Complaint, alleging Defendant's violations of the FCA, discrimination and retaliation under Title VII and the Pennsylvania Human Relations Act, and wrongful termination under Pennsylvania common law. (Doc. No. 1); 31 U.S.C. § 3730(h); 42 U.S.C. § 2000e; 43 Pa. Stat. Ann. §§ 951-63.

Relator alleges that he filed his retaliation claim with the Pennsylvania Human Relations Commission, and has thus cross-filed with the Equal Employment Opportunities Commission. (Id. ¶¶ 77, 78.) Although the PHRC issued a right to sue letter in October 2009, Relator has not

received a right to sue letter from the EEOC. (Id. ¶ 78.)

At the Government's request, I unsealed the Complaint only as to Defendants on April 7, 2011. (Doc. No. 12.) The Government then declined to intervene. (Doc. No. 15.)

## II.  The Original Complaint

Relator brought his FCA claim under "31 U.S.C. § 3729, *et seq.*" (Doc. No. 1.) Relator also alleged: 1) that he was illegally fired because he complained to Defendants of the FCA violations; 2) state law wrongful termination; and 3) federal and state law employment discrimination and retaliation. (Id.)

Because Relator did not invoke a specific subsection of the FCA, I assumed that he was proceeding under the first subsection—§ 3729(a)(1)—which provides:

> Any person who . . . knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval . . . is liable to the United States Government for a civil penalty.

Id. Because Relator had failed to allege that Defendants had "knowingly presented" their false claims to the United States, I dismissed without prejudice. (Doc. No. 36.) I also found that Relator had failed to state claims for FCA retaliation and Title VII discrimination and retaliation. (Id.) Accordingly, I also dismissed those claims without prejudice.

## III.  The Amended Complaint

Relator pled that he was proceeding under "§ 3729(a)(1), *et seq.*" (Doc. No. 37.) I ruled that Relator again had "not alleged that the PWDC presented Defendants' allegedly false claims to the Government for payment." (Doc. No. 40.) I thus granted Defendants' Motion to Dismiss in part, and gave Relator a final opportunity to allege a cognizable FCA claim and to clarify the

subsection or subsections under which he sought to proceed.

## IV. The Second Amended Complaint

In addition to bringing a claim under § 3729(a)(1), Relator has, for the first time, also invoked a second subsection—§ 3729(a)(1)(B). This provision was previously numbered § 3729(a)(2). In 2009, Congress amended it, renumbered it to § 3729(a)(1)(B), and explicitly required its retroactive application. Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625. The Supreme Court held that in the provision's 2008 version (when it was numbered § 3729(a)(2)), it required proof that the Relator intended to defraud the United States. Allison Engine, Co., Inc. v. United States ex rel. Sanders, 553 U.S. 662, 668-69 (2008) ("[A] person must have the purpose of getting a false or fraudulent claim 'paid or approved by the Government' in order to be liable under § 3729(a)(2).") Dismayed by Allison Engine, in 2009 Congress eliminated this intent requirement and renumbered the provision to § 3729(a)(1)(B):

> Any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty . . . .

§ 3729(a)(1)(B). In addition to invoking this 2009 Amendment, Relator has again alleged: 1) retaliation under the FCA; 2) state law wrongful termination, and 3) federal and state law employment discrimination and retaliation.

Defendants have filed a Third Motion to Dismiss, arguing, *inter alia*, that retroactive application of the 2009 Amendment would violate the *ex post facto* principle. At my request, the Parties have submitted supplemental briefs on the retroactivity question, and the Government has also addressed the question in its "Statement of Interest." (Doc. Nos. 51, 52, 53.)

5

## **DISCUSSION**

### I.  **False Claims Act**

The False Claims Act's "primary purpose . . . is to indemnify the government—through its restitutionary penalty provisions—against losses caused by a defendant's fraud." United States ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 304 (3d Cir. 2011) (internal citation omitted).  A private individual (the relator) may bring a civil action to enforce the FCA on behalf of the Government.  31 U.S.C. § 3730(b).  After it has had the opportunity to investigate, the Government may elect to intervene in the litigation.  Id.  Each violation of the FCA could result in a civil penalty of $5,000-$10,000, plus "three times the amount of damages which the Government sustains . . . ."  § 3729(a).  The relator may receive a portion of any recovery.  § 3730(d).

As I have discussed, before May 2009, the Act imposed liability on any individual who, *inter alia*, "(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; (2) *knowingly makes, uses or causes to be made or used, a false record or statement* to get a false claim or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(1), (2) (1994) (emphasis added).

In the 2009 Amendment, Congress made changes to Section 3729(a)(1) that are not material here.  Congress singled out subsection 3729(a)(2), however,—now (a)(1)(B)—to apply retroactively to all "claims made under the FCA that are pending on or after" June 7, 2008. FERA, Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625; see also 31 U.S.C. § 3729(a)(1)(B) (imposing liability for "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false

6

record or statement material to a false or fraudulent claim"). Because the Amendment no longer requires proof of the defendant's intention to defraud the Federal Government, the amended provision applies to a wider range of conduct. § 3729(a)(1)(B); United States ex rel. Int'l Bhd. Of Elec. Workers, Local Union 98 v. Fairfield Co., No. 09-4230, 2013 WL 3327505, at *8 (E.D. Pa. July 2, 2013).

Relator proceeds under § 3729(a)(1) and the 2009 Amendment—§ 3729(a)(1)(B). Relator alleges that Defendants' wrongful conduct took place from November 2008 to March 2009 and so falls squarely within the Congressionally stated period of retroactivity.

### A. *Retroactive Application of the 2009 Amendment*

The *Ex Post Facto* Clause prohibits "the enactment of any law that 'retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts.'" Keitt v. U.S. Parole Com'n, 238 F. App'x 755, 759 (3d Cir. 2007) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)). In determining whether retroactive application of a statute is permissible, the "court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for'" a civil or criminal label. Myrie v. Comm'r, 267 F.3d 251, 256 (3d Cir. 2001) (quoting United States v. Ward, 448 U.S. 242, 248 (1980)).

Congress explicitly intended the FCA to be civil. The Act imposes a "civil penalty" for false claims and provides that a relator may bring a "civil action" on the Government's behalf for a violation of the Act. § 3729(a)(1); § 3730(b); see also Nat'l Taxpayers Union v. Soc. Sec. Admin., 302 F. App'x 115, 120 (3d Cir. 2008) (statute's provision for "civil money penalty" established that legislature intended to create civil statute). Further, the Act authorizes actions that are brought in accordance with the Federal Rules of Civil Procedure, and imposes an

7

evidentiary preponderance standard of proof. § 3732(a); § 3731(d).

Although the FCA thus appears to be civil, I still must determine whether the statute is punitive in effect. Smith v. Doe, 538 U.S. 84, 92 (2003). Only the "clearest proof" can override the legislature's intention to create a civil penalty. Hudson v. United States, 522 U.S. 93, 99 (1997). Accordingly, I must consider:

> 1) whether the sanction involves an affirmative disability or restraint; 2) whether it has historically been regarded as a punishment; 3) whether it comes into play only on a finding of scienter; 4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether an alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears excessive in relation to the alternative purpose assigned.

Hudson, 522 U.S. at 99-100 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).

Once again, the Act imposes a "civil penalty" of "not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains . . . ." § 3729(a). The Mendoza-Martinez Factors underscore that this penalty is not penal.

As Defendants concede, the FCA's fine provision does not involve an affirmative disability or restraint (Factor 1). Myrie, 267 F.3d at 260 (Factor 1 requires a determination of how closely the penalty resembles "the infamous punishment of imprisonment").

Contrary to Defendants' contentions, the Third Circuit has observed that "[m]onetary penalties have not historically been viewed as punishment." (Factor 2). Nat'l Taxpayers, 302 F. App'x at 120 (citation omitted); see also Cook Cnty., Ill. v. United States ex rel. Chandler, 538 U.S. 119, 131 (2003) ("Treble damages certainly do not equate with classic punitive damages,

which leave the jury with open-ended discretion over the amount . . . ."); Hudson, 522 U.S. at 104 ("[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings . . . ." (citation omitted)).

Defendants rely heavily on the Supreme Court's suggestion in Vermont Agency of Natural Resources v. United States ex rel. Stevens, that "the current version of the FCA imposes damages that are essentially punitive in nature." 529 U.S. 765, 784 (2000). The Court subsequently explained, however, that the treble damages provision did not make the Act itself punitive.

> [A]lthough Stevens recognized that the FCA's treble damages remedy is still "punitive" in that recovery will exceed full compensation in a good many cases, the force of this punitive nature . . . is not as robust as if it were a pure penalty in all cases. Treble damages certainly do not equate with classic punitive damages . . . .

Cook Cnty., 538 U.S. at 131-32. Indeed, the Cook County Court recognized that the treble damages provision has a compensatory purpose (Factor 6).

> There is no question that some liability beyond the amount of the fraud is usually necessary to compensate the Government completely . . . . In *qui tam* cases the rough difference between double and triple damages may well serve not to punish . . . .

Id. at 130-31 (citation omitted).

Whether the FCA's penalty provision is excessive is a closer question. I conclude that it is not excessive, given its remedial purposes: encouraging would-be *qui tam* relators and compensating the Government for investigative costs and the fraud itself (Factor 7). Id.; see also Pascocciello v. Interboro Sch. Dist., No. 05-5039, 2006 WL 1284964, at *8 (E.D. Pa. May 8, 2006) ("Cook County explains why the FCA's treble damages feature is not necessarily punitive

in nature.").

Although the FCA requires proof of "reckless disregard," this is not "scienter" (Factor 3). § 3929(b)(1); see also United States ex rel. Bergman v. Abbot Labs., 995 F. Supp. 2d 357, 385 (E.D. Pa. 2014) (noting that the Third Circuit has defined scienter to exclude recklessness).

The conduct for which the sanctions are imposed can also be the basis for criminal liability (Factor 5). 18 U.S.C. § 287. This weighs against finding that the Act is penal, however. Having created a criminal statute to punish the submission of false claims, Congress could have amended that statute if it sought to make the punishment more severe. The creation and existence of the FCA thus serves a different purpose. Hudson, 522 U.S. at 105; see also Sanders v. Allison Engine Co., 703 F.3d 930, 946 (6th Cir. 2012), cert. denied 133 S. Ct. 2855 (2013), ("[T]he FCA as amended by [the Fraud Enforcement and Recovery Act of 2009] appears to cover more conduct than that proscribed by the criminal statute."); United States ex rel. Drake v. NSI, Inc., 736 F. Supp. 2d 489, 501 (D. Conn. 2010) ("[T]he presence of both a civil statute and a criminal statute weighs in favor of finding a civil purpose of the FCA.").

Similarly, the deterrent effect of FCA's penalty (Factor 4) does not make the Act punitive. Hudson, 522 U.S. at 102 ("[A]ll civil penalties have some deterrent effect."); Nat'l Taxpayers, 302 F. App'x at 120 ("Although [the] monetary penalty likely promotes the traditional ends of punishment, retribution and deterrence, . . . that alone is not enough to characterize the penalty as penal in nature . . . .").

In these circumstances, as numerous Courts have concluded, "the [Mendoza-Martinez] . . . factors fail to demonstrate a sufficiently punitive purpose or effect" to characterize the FCA penalty provision as criminal. Sanders, 703 F.3d at 948; United States ex rel. Miller v. Bill

Harbert Intern. Const., Inc., 608 F.3d 871, 878 (D.C. Cir. 2010) (applying the 2009 Amendment retroactively because "[t]he FCA is not penal"); Int'l Broth. Of Elec. Workers, 2013 WL 3327505, at *8 (retroactive application of 2009 Amendment does not violate the Ex Post Facto Clause); Drake, 736 F. Supp. 2d at 502; see also Genty v. Resolution Trust Corp., 937 F.2d 899, 912 & n.7 (3d Cir. 1991) (noting that in the "special context" of the FCA, multiple damages provision is not punitive, but allows for "liquidated damages to assure the plaintiff's full compensation"); Bergman, 2014 WL 348583, at *24 ("[T]he treble damages . . ., although hefty enough to strongly suggest a punitive character, are not excessive enough to completely obliterate their compensatory purpose."); cf. United States v. Rogan, 517 F.3d 449, 453-54 (7th Cir. 2008) ("We know from Hudson . . . that penalties under the False Claims Act are not criminal punishment for the purpose of the Double Jeopardy Clause . . . ."); United States ex rel. Estate of Botnick v. Cathedral Healthcare Sys., Inc., 352 F. Supp. 2d 530, 532 (D.N.J. 2005) ("In consideration of [Cook County's] most recent interpretation of the FCA . . . the Court must agree that the action is remedial."); United States ex rel. Colucci v. Beth Israel Med. Ctr., 603 F. Supp. 2d 677, 683 (S.D.N.Y. 2009) ("[I]t is by now established that the [FCA] has a mixed remedial and punitive purpose, and [Cook County] holds that the punitive nature of FCA damages does not outweigh the statute's compensatory goals.").

The cases on which Defendants rely are less than persuasive: two adopted the reasoning of a District Court decision that was subsequently overturned. See United States ex rel. Baker v. Cmty. Health Sys., Inc., 709 F. Supp. 2d 1084, 1112 (D.N.M. 2010); United States v. Hawley, 812 F. Supp. 2d 949, 960-61 (N.D. Iowa 2011). In Massachusetts v. Schering-Plough Corporation, the District Court deemed the Massachusetts false claims law punitive because, unlike the FCA, the Massachusetts statute explicitly provides for the award of prejudgment

11

interest and consequential damages in addition to treble damages. 779 F. Supp. 2d 224, 237 (D. Mass. 2011) (noting that, in finding the treble damages provision remedial, the Cook County Court emphasized the absence in the FCA of explicit prejudgment interest and consequential damages provisions).

In these circumstances, Defendants' arguments—however elegant and plausible—do not amount to the "clearest proof" that the FCA is penal. Hudson, 522 U.S. at 100. Accordingly, I am bound by Congress' stated intention, and so conclude that the Act is civil both facially and in effect. Its retroactive application is thus permissible.

Defendants alternatively argue that retroactive application of the FCA's penalty provision would violate the Constitution "viewed through a due process punitive damages prism." (Doc. No. 53, at 24.) Yet, the Cook County Court was untroubled by whether the FCA comported with due process:

> Treble damages certainly do not equate with classic punitive damages, which leave the jury with open-ended discretion over the amount . . . .

538 U.S. at 132; United States v. Karron, 750 F. Supp. 2d 480, 493 n.12 (S.D.N.Y. 2011) ("[T]he damages imposed would [not] violate the Due Process Clause of the Fifth Amendment. The statute is clear that courts must impose both civil penalties and treble damages for violations of the FCA. Additionally, we are not aware of a successful due process challenge to the FCA's scheme of damages . . . .").

Either the imposition of damages under the FCA comports with due process or it does not. Every Court to address this issue has held that it does. See, e.g., Allison Engine, 703 F.3d at 948-49 (the Supreme Court's due process cases in the punitive damages context do not "indicate that the treble damages under the FCA that might attach to conduct reached by a

12

retroactive application of § 3729(a)(1)(B) would implicate the same due process concerns"); see also United States ex rel. Longhi v. Lithium Power Techs., 530 F. Supp. 2d 888, 899 (S.D. Tex. 2008) ("[A]n award of treble damages does not violate the Constitution."). I do not understand—and Defendants have not explained—how the retroactive application of the FCA and its penalty provision should compel a different result.

### B. *Adequacy of § 3729(a)(1) Claim*

For the third time, Relator has failed to state a claim under the 2008 version of Section 3729(a)(1). Once again, under that provision, a relator must allege that:

> (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.

United States ex rel. Schmidt v. Zimmer, 386 F.3d 235, 242 (3d Cir. 2003).

Relator alleges only that Pennsylvania officials submitted Defendants' fraudulent financial information to the United States. Relator's Second Amended Complaint does not include an allegation that Defendants themselves presented fraudulent claims to the Government or, through the operation of law, caused the claims to be presented to the Government. Second Am. Compl. ¶ 48; U.S. ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 308 (3d Cir. 2011) (upholding dismissal of FCA claim alleging violations of Medicare regulations where relator failed to plead that "compliance with the regulation which the defendant allegedly violated was a condition of payment from the Government"); United States ex rel. Spay v. CVS Caremark Corp., 913 F. Supp. 2d 125, 147 (E.D. Pa. 2012) ("A legally false certification of compliance with a statute or regulation cannot form a viable FCA cause of action unless payment is expressly conditioned on that certification."); see also United States Dep't of Transp. ex rel.

Arnold v. CMC Eng'g, 564 F.3d 673, 678 (3d. Cir. 2009) ("[I]f the federal government provides money in a lump sum to a grantee, and is thereafter uninvolved in the disbursement of the funds, the FCA does not apply."); United States ex rel. Dennis v. Health Mgmt. Assocs., No. 09-484, 2013 WL 146048 (M.D. Tenn. Jan. 14, 2013) (relator failed to plead presentment of false claim where he did not allege what payment from the government was obtained as a result of the false claims).

Relator's original Complaint and First Amended Complaint suffered from this same defect. Having twice given Relator a chance to plead, I will dismiss this portion of Count I with prejudice.

## II. State Law Wrongful Termination

I previously ruled that Relator pled a cognizable Wrongful Termination Claim. (Doc. No. 38.) Even though Relator brought this action well within the two-year statute of limitations, Defendants now argue the Wrongful Termination Claim is time-barred because Relator served the Complaint outside the limitations period (after it was unsealed on April 27, 2011). It is not "clear from the face of the Complaint," however, that the pleading is defective. Singer v. Bureau of Prof'l & Occupational Affairs, 523 F. App'x 185, 186 (3d Cir. 2013); Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F. Supp. 1450, 1455 n.3 (E.D. Pa. 1992) ("[T]imely filing of a complaint may be sufficient to toll the running of the statute of limitations even in the absence of proper service within the statutory period."); U.S. ex rel. Parikh v. Premra Blue Cross, No. 01-0476, 2007 WL 1031724, at *4 (W.D. Wash. Apr. 3, 2007) ("[A]lthough [defendant] did not receive official notice of the lawsuit until it received . . . the complaint, the statute of limitations is tolled on the date the original complaint was filed."); U.S. ex rel. Costa v. Baker & Taylor,

14

Inc., No. 95-1825, 1998 WL 230979 (N.D. Cal. Mar. 20, 1998) (where claims brought under both FCA and state law, statute of limitations tolled on date complaint was filed).

Serving the Complaint before it was unsealed would have violated my Sealing Order. Defendants suggest that if Relator had filed his non-FCA claims separately, they would not have been subject to the FCA's sealing provision. (Doc. No. 43, at 11.) The law does not require piecemeal prosecution of civil claims. Cf. United States ex rel. Carey v. Brock, No. 04-131, 2006 WL 1195887, at *3 (E.D. Tenn. May 2, 2006) ("[W]hen the [plaintiff's individual losses] occur[] simultaneously with the federal government's injury and when there is an economic loss, the plaintiff relator should not have to pursue a state law claim in another proceeding." (citing United States ex rel. Woodard v. Country View Care Ctr., Inc., 797 F.2d 888, 894 (10th Cir. 1986))). In any event, because Relator's Wrongful Termination Claim is intertwined with his FCA allegations, earlier service of that Claim might nonetheless have violated my Sealing Order. In these circumstances, I will not dismiss this Claim.

### III. Title VII Claim

Like his Complaint and First Amended Complaint, Relator's Second Amended Complaint does not include an allegation that he received a right-to-sue letter from the Equal Employment Opportunity Commission. See Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001); Lee v. City of Philadelphia, No. 08-862, 2008 WL 2697320, at *2 (E.D. Pa. July 3, 2008) ("Without a right-to-sue letter the suit can be dismissed . . . for failure to state a claim . . . ."). Relator has alleged, however, that he cross-filed his Pennsylvania Human Rights Commission Complaint with the EEOC, and that his failure to receive this letter is the result of the EEOC's error. Scott v. Metro. Life Ins. Co., No. 00-2090, 2000 WL 1100787, at

*2-4 (E.D. Pa. Aug. 7, 2000) (denying motion to dismiss Title VII claim for failure to receive right to sue letter where plaintiff alleged the EEOC's administrative error); Colon v. Roto-Rooter Servs., Co., No. 96-5737, 1997 WL 570927, at *1 (E.D. Pa. Sept. 5, 1997) (plaintiff did not need to file with PHRA where she cross-filed with EEOC).

I will not dismiss Relator's Title VII claim at this stage. At summary judgment, Defendants may again raise Relator's apparent failure to exhaust.

## CONCLUSION

The retroactive application of Section 3729(a)(1)(B) is permissible. Defendants do not argue that Relator has failed to state a claim under Section 3729(a)(1)(B). I will dismiss Relator's Section 3729(a)(1) claim with prejudice (except as to the United States). I will otherwise deny Defendants' Motion to Dismiss.

An appropriate Order follows.

September 16, 2014

/s/ Paul S. Diamond
Paul S. Diamond, J.